JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CYNTHIA PUSSINEN | SPARK THERAPEUTICS, INC. |

**(b)** County of Residence of First Listed Plaintiff    Windham, CT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Shawn McBrearty, Sidkoff, Pincus & Green, P.C.,
1101 Market Street, Suite 2700, Philadelphia, PA 19107

Attorneys *(If Known)*
Joseph Centeno, Buchanan Ingersoll & Rooney,
50 S. 16th Street, Suite 3200, Philadelphia, PA 19102

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [X] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 2000e et seq.

Brief description of cause:
Sex discrimination and retaliation for complaining of same

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE   Murphy
DOCKET NUMBER   23-CV-03106

DATE   4/25/24

SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

05/2023

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 64 Snake Meadow Hill Road, Moosup, CT 06354

Address of Defendant: 3737 Market Street, Suite 1300, Philadelphia, PA 19104

Place of Accident, Incident or Transaction: Philadelphia, PA

---

**RELATED CASE IF ANY:**
Case Number: 23-CV-03106          Judge: Murphy          Date Terminated: Pending

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☒ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court? | Yes ☒ | No ☐ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☒ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual? | Yes ☐ | No ☒ |

I certify that, to my knowledge, the within case ☒ is / ☐ is not related to any now pending or within one year previously terminated action in this court except as note above.

DATE: _____   *Attorney-at-Law (Must sign above)*          326661   *Attorney I.D. # (if applicable)*

---

**Civil (Place a √ in one category only)**

*A.   Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. All Other Federal Question Cases. *(Please specify)*:_____

*B.   Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Shawn McBrearty, counsel of record *or* pro se plaintiff, do hereby certify:

- ☒ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☒ Relief other than monetary damages is sought.

DATE: 4/25/24          *Attorney-at-Law (Sign here if applicable)*          326661   *Attorney ID # (if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CYNTHIA PUSSINEN** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **SPARK THERAPEUTICS, INC.** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

### I.     PRELIMINARY STATEMENT

Plaintiff, Cynthia Pussinen ("Plaintiff"), brings this action against her former employer, Spark Therapeutics, Inc. ("Defendant'), alleging that Defendant discriminated against her because of her sex (female) and retaliated against her because of her complaints of sex discrimination, culminating in the termination of her employment based upon articulated reasons that are false and pretextual.  Defendant's acts and practices of discrimination and retaliation were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951 *et seq.* ("PHRA").  To remedy Defendant's unlawful acts and practices, Plaintiff seeks economic damages, compensatory damages for pain and suffering and emotional distress and other non-economic harm, punitive damages, attorneys' fees and costs, and all other relief that the Court deems appropriate.

### II.     PARTIES

1.     Plaintiff is an adult female and a citizen of the State of Connecticut, residing in Moosup, CT.

2.      Defendant is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, which maintains a principal place of business and corporate headquarters in Philadelphia, PA.

3.      Defendant is and at all relevant times has been engaged in the business of developing gene therapy treatments for debilitating genetic diseases.

4.      At all relevant times, Defendant acted by and through its authorized agents, servants and employees, acting within the scope and course of their employment and in furtherance of Defendant's mission, business, and affairs.

5.      At all relevant times, Defendant was and acted as an "employer" within the meaning of and as defined by Title VII and the PHRA.

6.      At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of and as defined by Title VII and the PHRA.

III.    **JURISDICTION AND VENUE**

7.      This Court has jurisdiction over Plaintiff's claims arising under Title VII pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

8.      This Court has supplemental jurisdiction over Plaintiff's claims arising under the PHRA pursuant to 28 U.S.C. §1367.

9.      This Court also has jurisdiction over all of Plaintiff's claims pursuant to 28 U.S.C. §1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

10.     Venue is proper in this judicial district as to Plaintiff's Title VII claims pursuant to 42 U.S.C. §2000e-5(f)(3) because the unlawful employment practices were committed here; employment records relevant to those practices are maintained and

2

administered here; and Plaintiff would have worked here but for the unlawful employment practices.

11.    Venue is also proper in this judicial district pursuant to 28 U.S.C. §1391(b) because the Defendant resides here and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here.

## IV.    COMPLIANCE WITH ADMINISTRATIVE REQUIREMENTS

12.    All administrative requirements and conditions precedent to the filing of this action have been satisfied by Plaintiff.

13.    Specifically, on or about December 30, 2022, Plaintiff filed a timely Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), in which she complained of the acts and practices of discrimination and retaliation alleged herein.

14.    Plaintiff's Charge of Discrimination ("EEOC Charge") was cross-filed with the Pennsylvania Human Relations Commission ("PHRC") on or about December 30, 2022.

15.    On January 30, 2024, the EEOC issued to Plaintiff a "Dismissal and Notice of Rights" (the "EEOC Notice"), informing Plaintiff that the EEOC had granted her request for the EEOC Notice since more than 180 days had passed since the filing of Plaintiff's EEOC Charge.  A true and correct copy of the EEOC Notice is attached hereto as Exhibit "A".

16.    The EEOC Notice further informed Plaintiff that she was required to file a lawsuit against Defendant within 90 days of her receipt of the EEOC Notice.  See Exhibit "A".

3

17.     Because Plaintiff is filing this action within 90 days of her receipt of the EEOC Notice, the action is timely under Title VII.

18.     This action is also timely filed under the PHRA.

## V.    SUMMARY OF FACTS

### A.    Plaintiff's Employment History and Performance with Defendant

19.     On or about February 6, 2021, Plaintiff commenced employment with Defendant as its Chief Technical Officer.

20.     Initially, Plaintiff reported to Jeff Marrazzo, a male, who was Defendant's Chief Executive Officer ("CEO").

21.     Plaintiff occupied the position of Chief Technical Officer and reported to Defendant's CEO throughout the entire course of her employment with Defendant.

22.     The group that Plaintiff led as Defendant's Chief Technical Officer was known as Technical Development & Operations ("TD&O"), which during Plaintiff's tenure at Defendant had close to 400 employees.

23.     Plaintiff continued to report to Marrazzo until the end of March 2022, at which time Marrazzo was replaced by Ron Philip, a male, as Defendant's CEO.

24.     Plaintiff then reported to Philip from approximately April 1, 2022 until her employment was terminated by Defendant effective November 1, 2022.

25.     Throughout the course of her employment with Defendant, Plaintiff performed her job responsibilities at a high level of proficiency and was recognized by Defendant for her superior performance.

4

26.    In September of 2021, Marrazzo sent a text to Plaintiff commending her for her "great work and performance" on an important presentation to the Board of Roche, which is Defendant's parent company.

27.    On November 10, 2021, Plaintiff received a text from Jennifer Flaisher, a female, who was Defendant's Chief People Officer, in which Flaisher stated that Plaintiff was "the right leader to right the ship" and that "everyone knows it."

28.    On November 13, 2021, Marrazzo sent Plaintiff an email stating that he was "so impressed with [her] from [her] start" based on "how fast [she had] come up to speed on the business and the issues that need to be solved."  In the same email, Marrazzo encouraged Plaintiff to "keep up all the great work."

29.    On January 26, 2022, in connection with Plaintiff's first formal performance review, which was for the year 2021, Marrazzo sent Plaintiff an email in which he made glowing comments regarding Plaintiff's performance, which included the following:

> Stellar performance! Your leadership in ensuring delivery of 3025 and 3737 second suite readiness, as well as navigating through the 3000M challenges was exemplary and one of the many reasons I have so much confidence in your ability to improve our company's overall operational effectiveness. Most critically was your partnership and leadership in landing the GTIC [Gene Therapy Innovations Center] business case and plan.  Your preparation for and deliver of our case to the Roche board meeting in September was a high point for me during the year and your work delivered a major milestone in Spark's history.
>
> * * * * *
>
> Making hard and good people decisions is clearly a strength of yours that came out in your peer feedback and you should continue to lean on it where you may need to address performance issues below your leadership team.  I also applaud all the work you've done to focus on the engagement of your organization and while the data may be

5

> a few months out from now it is clear from your stakeholder
> feedback that you've taken an organization that was in
> disarray and quickly stabilized it and turned the corner. Your
> commitment to DE&I [Diversity, Equity & Inclusion] and
> having your leaders invest in training here is one of just a
> number of examples of how you are turning around the
> culture of TD&O.

30.     In February 2022, Plaintiff received a Year-End Compensation Statement from Defendant for 2021 informing her that she was being awarded a $15,000 merit salary increase as well as the highest annual bonus for which she was eligible, which amounted to 110% of the target.

31.     In addition, Defendant awarded itself a 110% corporate performance rating for 2022. Given that Plaintiff's team made up 53% of Defendant's workforce and played an integral role in delivering on virtually each corporate goal, Plaintiff's performance had to have been a major consideration in Defendant awarding itself this performance rating for 2022.

32.     However, on August 5, 2022, during a Zoom meeting, Plaintiff was advised by CEO Philip that her employment with Defendant was being terminated.

33.     On August 16, 2022, Philip, on behalf of Defendant, published to Defendant's employees an Organizational Announcement in which he announced Plaintiff's forthcoming departure from Defendant and commended Plaintiff "for [her] many contributions to [Defendant] during [her] time with [Defendant]."

34.     After being informed of the termination of her employment, Plaintiff remained employed by Defendant, at Defendant's request, until November 1, 2022, which Defendant determined was Plaintiff's last day of work.

35.     After she was advised by Philip that her employment with Defendant would be terminated, and while she remained employed by Defendant for several months at Defendant's request due to Defendant's needs, Plaintiff continued to contribute significantly to the achievement of critical goals for Defendant, which included preparing for the groundbreaking on the GTIC.  Plaintiff's work on this important project entailed leading interactions with community organizations and City officials, and at zoning board meetings.

36.     Through Plaintiff's efforts, Defendant ultimately secured an "approved" vote for the GTIC project from Philadelphia's Powelton Village Civic Association ("PVCA").  In the past 30 years, or longer, the PVCA has only rendered two positive opinions on building projects in Philadelphia's University City area, with Defendant's GTIC building project led by Plaintiff being one of them.

37.     On or about October 23, 2022, Philip, on behalf of Defendant, published an announcement to Defendant's employees which praised Plaintiff "for [her] personal leadership during the past few months while [Defendant] made this transition," and "for [Plaintiff's] many contributions to [Defendant]."

## VI.   DEFENDANT'S ACTS AND PRACTICES OF SEX DISCRIMINATION AND PLAINTIFF'S COMPLAINTS OF SEX DISCRIMINATION

38.     While Plaintiff was employed by Defendant, she was subjected to repeated and ongoing acts and practices of sex discrimination by some of her male peers and colleagues, most notably by Federico Mingozzi, who was Defendant's Chief Scientific Officer.

7

39.     Mingozzi continually bullied Plaintiff because of her sex; and his abusive and misogynistic treatment of Plaintiff created a hostile and abusive work environment for Plaintiff.

40.     Beginning in March of 2021, and continuing thereafter, Plaintiff complained to Defendant's upper management about Mingozzi's sexism, discriminatory treatment and bullying, but nothing was done by Defendant to protect Plaintiff (or other female employees) from Mingozzi's misogyny.

41.     Some of Plaintiff's most notable complaints to Defendant's upper management are alleged below.

42.     In May 2021, Plaintiff complained to Philip, who at the time was Defendant's Chief Operating Officer ("COO"), about Mingozzi's hostile and discriminatory treatment of her.  Philip acknowledged to Plaintiff that he was aware of Mingozzi's mistreatment of females but rather than take corrective action, Philip instructed Plaintiff to "make it work" with Mingozzi because "we need him more than he needs us," and he told Plaintiff that everyone except Mingozzi was "expendable."

43.     As time went on, co-workers and subordinates of Plaintiff informed her that they had witnessed Mingozzi ridicule and mistreat her during business meetings.

44.     Mingozzi consistently treated his male peers and colleagues better and more favorably than he treated Plaintiff; and he treated males with dignity and respect – much differently than the way he treated Plaintiff.

45.     In October 2021, Plaintiff attended a "Conversations with Communities" event that was arranged and attended by female employees of Defendant.  At that event, Plaintiff learned that the hostile and discriminatory work environment that she

8

had been experiencing was more pervasive at Defendant than she had previously known. Other female employees who attended the event shared their personal experiences about being treated differently and more harshly than their male colleagues, with comments being made during the event about Defendant being an "Old Boy's Network."

46.     On November 9, 2021, Plaintiff complained to Flaisher that Mingozzi and other male colleagues were treating her in a hostile and negative manner – less favorably than the manner in which they treated their male colleagues.

47.     Plaintiff further informed Flaisher on November 9, 2021 that she was being held to a higher standard than males; that she was being singled out for criticism by male colleagues who were not listening to her; that she did not feel like she was part of Defendant's team; and that Mingozzi and other male peers did not seem to value her input and were trying to exclude her.

48.     On January 12, 2022, Plaintiff witnessed Mingozzi treat one of Plaintiff's direct reports, Van Hoang, a female, in an openly hostile and aggressive manner during a meeting attended by many of Defendant's managers, including members of its Corporate Management Team.

49.     Mingozzi's public abuse and humiliation of Hoang at the January 12, 2022 meeting was so offensive that other female employees on Plaintiff's team protested to Plaintiff about it.

50.     In addition, following the January 12, 2022 meeting, Hoang complained to Plaintiff that she felt ambushed, decimated and humiliated by Mingozzi, as a result of which Plaintiff reported Mingozzi's mistreatment of Hoang to Flaisher and Jamie

9

Schmid, a female, who was the HR Business Partner for Plaintiff's group.  Plaintiff protested to Flaisher and Schmid that Mingozzi had bullied and abused Hoang because she is a female.

51.     Plaintiff also complained to the COO, Philip, about Mingozzi's public humiliation of Hoang.

52.     On January 21, 2022, Plaintiff sent an email to Marrazzo complaining about the manner in which she was being treated by Mingozzi and other male peers. Plaintiff's email to Marrazzo specifically mentioned the behavior of Mingozzi, Philip and a third male manager, Chief Strategy Officer, Michael Retterath, and stated that they were "not being open-minded but exhibiting bias in many situations."

53.     Around the same time, Plaintiff complained to Marrazzo in a Zoom call or via teleconference that Mingozzi was continuing to harass her because she is a female and that his behavior had created a hostile and toxic work environment.

54.     At a budget meeting attended by Defendant's upper management and other managers on February 9, 2022, Mingozzi grilled Plaintiff mercilessly during her presentation in a negative and unprofessional manner, while attempting to discredit Plaintiff through a series of hostile and derogatory remarks.

55.     Mingozzi's personal attack on Plaintiff during the February 9, 2022 budget meeting was totally unwarranted and humiliating; and during the budget meeting, at least two of Plaintiff's colleagues attempted to intervene to defend Plaintiff from Mingozzi's abuse, which was so overt and inappropriate that while the budget meeting was taking place, several of Plaintiff's female colleagues messaged Marrazzo to complain about Mingozzi.

56.     On February 9, 2022, following the budget meeting, Plaintiff had dinner with Gailia Levy, a female who was Defendant's Chief Medical & Product Strategy Officer.  Plaintiff complained to Levy that Mingozzi was continuing to treat her in a hostile and antagonistic manner because she is a female.

57.     On February 10, 2022, Plaintiff texted Flaisher to complain that at the February 9, 2022 budget meeting, she had been subjected to "a full on attack [by Mingozzi] that was completely unprofessional and non-productive," and that Plaintiff "felt targeted" by Mingozzi.

58.     On February 11, 2022, Plaintiff met with Paul Savidge, a male who was Defendant's Chief Legal Counsel, to complain to Savidge, who was present at the February 9, 2022 budget meeting, that she had been bullied and harassed by Mingozzi throughout her tenure at Defendant and that what had occurred at the budget meeting was the most public and overt display yet of Mingozzi's discriminatory treatment of her.

59.     Plaintiff also told Savage on February 11, 2022 that Mingozzi had subjected Hoang to his sexually discriminatory behavior.

60.     Savidge apologized to Plaintiff on February 11, 2022 for not defending her during the February 9, 2022 budget meeting; and he acknowledged that Plaintiff had been treated miserably by Mingozzi.  However, he also told Plaintiff that Defendant was counting on her to not do anything about it.

61.     On February 12, 2022, Plaintiff texted Marrazzo that she was "not OK" following the February 9, 2022 budget meeting.

62.     Plaintiff spoke to Marrazzo again on February 14 and 16, 2022, to further complain about the manner in which she had been treated by Mingozzi during the

11

February 9, 2022 budget meeting, and about Mingozzi's ongoing acts and practices of sex discrimination.

63.     In February 2022, Plaintiff complained to Flaisher that Mingozzi's behavior towards her throughout her employment with Defendant, including at the February 9, 2022 budget meeting, was discriminatory and had created a hostile and toxic work environment.

64.     In February 2022, Plaintiff complained to Marrazzo and Flaisher about Mingozzi's discriminatory bullying of Hoang.

65.     In late February 2022, Plaintiff knew that Philip would be replacing Marrazzo as Defendant's CEO.

66.     Knowing that Philip was to become the new CEO, Plaintiff contacted him on February 28, 2022, to further protest Mingozzi's sexist behavior.

67.     Plaintiff was hopeful that when Philip took over as CEO, he would take remedial action to protect Plaintiff and other females from discrimination.

68.     Flaisher arranged for a meeting with Plaintiff on March 8, 2022, to discuss how Plaintiff had been treated by Mingozzi during the February 9, 2022 budget meeting. When Flaisher asked Plaintiff if she felt that Mingozzi's bullying was due to the fact that she is a female, Plaintiff responded in the affirmative, telling Flaisher that Mingozzi treated her and other women much worse and with less respect than he treated his male colleagues.

69.     At a meeting Plaintiff had with Philip on or about March 21, 2022, Philip instructed Plaintiff to find a way to "make it work" with Mingozzi because Defendant needed him.

12

70.     Taking her cue from Philip, Plaintiff arranged for a dinner with Mingozzi on April 5, 2022, with the goal of trying to work things out with him so that they could move forward together in a positive manner.

71.     Plaintiff told Mingozzi at the April 5, 2022 dinner that his treatment of her, Hoang and other females was discriminatory and unacceptable, and that she would not continue to tolerate his bullying.

72.     However, after the April 5, 2022 dinner, Mingozzi continued to bully and mistreat Plaintiff; and he continued to exhibit his misogynistic behavior toward Plaintiff.

73.     At another meeting Plaintiff had with Philip on July 13, 2022, Plaintiff escalated her complaints about Mingozzi.  At that time, Plaintiff reported to Philip that Mingozzi was still bullying her because she is a female; and she specifically told Philip that "I am tired of it," "this shit needs to stop," "I won't continue to tolerate him bullying and mistreating me," and "it's not sustainable."

74.      Approximately three weeks later, on August 5, 2022, Philip stunned Plaintiff by informing her in a Zoom call that her employment with Defendant was being terminated.

## VII.   FALSE AND PRETEXTUAL NATURE OF ARTICULATED REASONS FOR TERMINATION OF PLAINTIFF'S EMPLOYMENT

75.     Philip informed Plaintiff during the August 5, 2022 Zoom call that her employment was being terminated as a result of his decision to "restructure" Defendant as part of a "reorganization."

76.     Philip further stated during the August 5, 2022 Zoom call that going forward, Defendant would not have a Chief Technical Officer and that Plaintiff's position was therefore being eliminated.

77.     The supposed elimination of Plaintiff's position was reiterated in a letter Plaintiff received from Flaisher dated August 18, 2022.

78.     In the Organizational Announcement published to Defendant's employees on August 16, 2022, Philip stated, inter alia, that:

- He had decided to "restructur[e] the [Technical Development & Operations] Organization to better align the organization with [Defendant's] strategic priorities."

- He had discussed with Plaintiff the "newly created Patient Supply position," but "it did not align with [Plaintiff's] own personal career goals and aspirations," as a result which Plaintiff had "decided to leave [Defendant]."

- Defendant would "post the Patient Supply Officer role internally" and "prioritize the hiring process with the goal of having a leader in place as soon as possible."

79.     Plaintiff was the only employee of Defendant whose employment was terminated as a result of the alleged "restructuring" and "reorganization" mentioned by Philip during the August 5, 2022 Zoom call and in the August 16, 2022 announcement.

80.     Defendant had no plausible or legitimate reason for terminating Plaintiff's employment or eliminating her position.  As noted above, Plaintiff's job performance was outstanding and she made many key contributions to the success of Defendant.

81.     In fact, after Philip informed Plaintiff that her employment was being terminated, Defendant asked Plaintiff to stay on so that she could continue to contribute to the achievement of important goals for Defendant, including preparation for the groundbreaking on the GTIC.

82.     Philip did not mention to or discuss with Plaintiff the Patient Supply Officer position referred to in the August 16, 2022 announcement.

14

83.     Plaintiff was therefore given no opportunity to accept or consider the Patient Supply Officer position in lieu of having her employment terminated.

84.     Philip's statement in the August 16, 2022 announcement that he had discussed the Patient Supply Officer position with Plaintiff and that Plaintiff said she was not interested in the position was therefore false.

85.     Contrary to what Philip stated in the August 16, 2022 announcement, Plaintiff did not decide to leave the employment of Defendant voluntarily. On the contrary, Plaintiff's termination was forced and involuntary.

86.     After Philip informed Plaintiff of the termination of her employment, Defendant and Philip promoted Chris Stevens, a male who is less qualified and less experienced than Plaintiff, to fill the position of Patient Supply Officer.

87.     In filling the Patient Supply Officer position, Stevens took over some of Plaintiff's former responsibilities.

88.     Although Philip had assured Plaintiff during the August 5, 2022 Zoom call that Defendant would not have a Chief Technical Officer going forward and that Defendant was therefore eliminating Plaintiff's job, Philip announced in October 2022 that Mingozzi's responsibilities would be expanded and that he would be assuming the role of Chief Science & Technology Officer, the equivalent level of Plaintiff's former job.

89.     When Defendant and Philip gave Mingozzi responsibility for 50% of Plaintiff's former role, "Technology" was added to Mingozzi's new title.

90.     After Philip informed Plaintiff of the termination of her employment, Plaintiff's responsibilities were assigned to and divided among three males: Stevens,

15

Mingozzi, and Kevin Fennell.  This was consistent with Defendant's practices of sex discrimination and its motive to retaliate against Plaintiff.

## COUNT I

### TITLE VII – DISCRIMINATION

91.     Plaintiff incorporates by reference thereto all of the allegations of Paragraphs 1 through 90, above, as if same were set forth fully and at length herein.

92.     Plaintiff was subjected to acts of harassment by Defendant and Mingozzi which created a hostile work environment.

93.     The acts of harassment that created the hostile work environment were motivated by the fact that Plaintiff is a female.

94.     The acts of harassment that created the hostile work environment were not welcomed by Plaintiff.

95.     Defendant knew and was made aware of the acts of harassment but failed to take prompt or adequate remedial action.

96.     The acts of harassment were so severe or pervasive that a reasonable person in Plaintiff's position would find their work environment to be hostile or abusive.

97.     Plaintiff reasonably believed that the acts of harassment caused her work environment to be hostile or abusive.

98.     Plaintiff suffered a tangible employment action as a result of the acts of harassment that created the hostile work environment.

99.     Plaintiff's employment was involuntarily terminated by Defendant.

100.    Plaintiff's sex was a determinative factor in Defendant's decision to terminate her employment.

101.   The reasons articulated by Defendant for terminating Plaintiff's employment are false and pretexts for sex discrimination.

102.   As a result of Defendant's acts and practices of sex discrimination in violation of Title VII, Plaintiff has suffered and will suffer economic harm in the form of loss of salary and wages, loss of bonuses, loss of equity, and loss of the value of employee benefits, thereby entitling Plaintiff to an award of back pay and an award of front (prospective) pay.

103.   As a further result of Defendant's acts and practices of sex discrimination in violation of Title VII, Plaintiff has suffered and will suffer pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, and harm to her reputation.

104.   In committing and permitting the acts and practices of sex discrimination, one or more management officials of Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

105.   Plaintiff is entitled to a declaratory judgment that Defendant violated her rights under Title VII, as well as equitable relief enjoining the Defendant from committing further violations of Title VII.

106.   As a further result of Defendant's acts and practices of discrimination in violation of Title VII, Plaintiff has incurred and will incur attorneys' fees and costs.

107.   Plaintiff is entitled to an award of prejudgment interest.

## COUNT II

## PHRA – DISCRIMINATION

108.   Plaintiff incorporates by reference thereto all of the allegations of Paragraphs 1 through 107, above, as if same were set forth fully and at length herein.

109.   Plaintiff was subjected to acts of harassment by Defendant and Mingozzi which created a hostile work environment.

110.   The acts of harassment that created the hostile work environment were motivated by the fact that Plaintiff is a female.

111.   The acts of harassment that created the hostile work environment were not welcomed by Plaintiff.

112.   Defendant knew and was made aware of the acts of harassment but failed to take prompt or adequate remedial action.

113.   The acts of harassment were so severe or pervasive that a reasonable person in Plaintiff's position would find their work environment to be hostile or abusive.

114.   Plaintiff reasonably believed that the acts of harassment caused her work environment to be hostile or abusive.

115.   Plaintiff suffered a tangible employment action as a result of the acts of harassment that created the hostile work environment.

116.   Plaintiff's employment was involuntarily terminated by Defendant.

117.   Plaintiff's sex was a motivating and/or determinative factor in Defendant's decision to terminate her employment.

118.   The reasons articulated by Defendant for terminating Plaintiff's employment are false and pretexts for sex discrimination.

18

119. As a result of Defendant's acts and practices of sex discrimination in violation of the PHRA, Plaintiff has suffered and will suffer economic harm in the form of loss of salary and wages, loss of bonuses, loss of equity, and loss of the value of employee benefits, thereby entitling Plaintiff to an award of back pay and an award of front (prospective) pay.

120. As a further result of Defendant's acts and practices of sex discrimination in violation of the PHRA, Plaintiff has suffered and will suffer pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, and harm to her reputation.

121. Plaintiff is entitled to a declaratory judgment that Defendant violated her rights under the PHRA, as well as equitable relief enjoining the Defendant from committing further violations of the PHRA.

122. As a further result of Defendant's acts and practices of discrimination in violation of the PHRA, Plaintiff has incurred and will incur attorneys' fees and costs.

123. Plaintiff is entitled to an award of prejudgment interest.

## COUNT III

## TITLE VII – RETALIATION

124. Plaintiff incorporates by reference thereto all of the allegations of Paragraphs 1 through 123, above, as if same were set forth fully and at length herein.

125. Plaintiff engaged in protected activity under Title VII when she complained of and opposed Defendant's and Mingozzi's acts and practices of sex discrimination.

126. Plaintiff was subjected to a materially adverse action following her protected activity, when Defendant terminated her employment.

19

127.   There was a causal connection between Plaintiff's protected activity and the termination of her employment.

128.   Plaintiff's protected activity had a determinative effect on the termination of her employment.

129.   The reasons asserted by Defendant for terminating Plaintiff's employment are false and pretexts for retaliation.

130.   As a result of Defendant's acts of retaliation in violation of Title VII, Plaintiff has suffered and will suffer economic harm in the form of loss of salary and wages, loss of bonuses, loss of equity, and loss of the value of employee benefits, thereby entitling Plaintiff to an award of back pay and an award of front (prospective) pay.

131.   As a further result of Defendant's acts of retaliation in violation of Title VII, Plaintiff has suffered and will suffer pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, and harm to her reputation.

132.   In committing and permitting the acts of retaliation against Plaintiff, one or more management officials of Defendant acted with malice and/or reckless inference to Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

133.   Plaintiff is entitled to declaratory judgment that Defendant violated her rights under Title VII, as well as equitable relief enjoining the Defendant from committing further violations of Title VII.

134.   As a result of Defendant's acts of retaliation in violation of Title VII, Plaintiff has incurred and will incur attorneys' fees and costs.

135.   Plaintiff is entitled to an award of prejudgment interest.

## COUNT IV

## PHRA – RETALIATION

136.    Plaintiff incorporates by reference thereto all of the allegations of Paragraphs 1 through 135, above, as if same were set forth fully and at length herein.

137.    Plaintiff engaged in protected activity under the PHRA when she complained of and opposed Defendant's and Mingozzi's acts and practices of sex discrimination.

138.    Plaintiff was subjected to a materially adverse action following her protected activity, when Defendant terminated her employment.

139.    There was a causal connection between Plaintiff's protected activity and the termination of her employment.

140.    Plaintiff's protected activity had a motivating and/or determinative effect on the termination of her employment.

141.    The reasons asserted by Defendant for terminating Plaintiff's employment are false and pretexts for retaliation.

142.    As a result of Defendant's acts of retaliation in violation of the PHRA, Plaintiff has suffered and will suffer economic harm in the form of loss of salary and wages, loss of bonuses, loss of equity, and loss of the value of employee benefits, thereby entitling Plaintiff to an award of back pay and an award of front (prospective) pay.

143.    As a further result of Defendant's acts of retaliation in violation of the PHRA, Plaintiff has suffered and will suffer pain, suffering, inconvenience, mental

21

anguish, loss of enjoyment of life, embarrassment, humiliation, and harm to her reputation.

144.   Plaintiff is entitled to declaratory judgment that Defendant violated her rights under the PHRA, as well as equitable relief enjoining the Defendant from committing further violations of the PHRA.

145.   As a result of Defendant's acts of retaliation in violation of the PHRA, Plaintiff has incurred and will incur attorneys' fees and costs.

146.   Plaintiff is entitled to an award of prejudgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks damages and equitable relief as a remedy for Defendant's unlawful conduct, and Plaintiff specifically prays that the Court grant her the following relief:

A.   A declaratory judgment that the acts and practices of Defendant complained of herein were in violation of the Title VII and the PHRA;

B.   An injunction and other appropriate equitable relief including enjoining the Defendant from committing further violations of Title VII and PHRA, and compelling the Defendant to take measures to prevent future violations;

C.   Awarding Plaintiff back pay;

D.   Awarding Plaintiff front pay;

E.   In lieu of front pay, ordering the reinstatement of Plaintiff to the employment of Defendant, with all attendant rights and benefits;

F.      Awarding compensatory damages to Plaintiff for pain, suffering, inconvenience, mental anguish, loss of life's pleasures, embarrassment, humiliation, and harm to reputation;

G.      Awarding prejudgment interest to Plaintiff;

H.      Awarding punitive damages to Plaintiff under Title VII;

I.      Awarding Plaintiff reasonable attorneys' fees and costs of suit; and

J.      Granting such other relief that is just and appropriate.

**SIDKOFF, PINCUS & GREEN, P.C.**

By: _____
Robert A. Davitch, Esq.
Casey Green, Esq.
Shawn McBrearty, Esq.
Attorney I.D. 23827/91005/326661
1101 Market Street, Suite 2700
Philadelphia, PA 19107
Tel: (215) 574-0600
rad@sidkoffpincusgreen.com
cg@sidkoffpincusgreen.com
smcbrearty@sidkoffpincusgreen.com

**Attorneys for Plaintiff, Cynthia Pussinen**

Date: April 25, 2024

23

# EXHIBIT "A"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/30/2024

**To:** Cynthia Pussinen
64 Snake Meadow Hill Road
Moosup, CT 06354
Charge No: 530-2023-02078

EEOC Representative and phone:

Legal Unit Representative
267-589-9707

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Karen McDonoug
01/30/2024
Karen McDonough
Deputy District Director

**Cc:**
Mia BELK
Spark Therapeutics Inc
3737 MARKET STREET SUITE 1300
Phila, PA 19104

Joseph Centeno
Buchanan Ingersoll & Rooney
50 S 16TH ST STE 3200
Philadelphia, PA 19102

Robert A Davitch
Sidkoff, Pincus &Green, P.C.
1101 Market Street Suite 2700
PHILADELPHIA, PA 19107


Please retain this notice for your records.